IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DEBRA WALKER, ET AL.    *

           *

v.           *

           *  3:85-CV-1210-O

U.S. DEPARTMENT OF HOUSING  *

AND URBAN DEVELOPMENT, ET AL., *  CLASS ACTION

           *

JOINT APPENDIX IN SUPPORT OF PLAINTIFFS' AND DHA'S MOTION
FOR APPROVAL AND DIRECTION OF NOTICE TO THE CLASS AND,
AFTER NOTICE, COMMENT, AND HEARING, FOR APPROVAL OF
THE PROPOSED AMENDED AGREED FINAL JUDGMENT

| Tab | Document | Page |
|-----|----------|------|
| 1. | Walker Amended Agreed Final Judgment and Agreed Settlement Voucher Implementation Plan 2019. | 2 |
| 2. | Notice of Pending Settlement of Class Action. | 33 |
| 3. | Signature. | 37 |
| 4. | Certificate of Service. | 38 |

1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEBRA WALKER, ET AL. | * | |
| | * | |
| v. | * | |
| | * | 3:85-CV-1210-O |
| U.S. DEPARTMENT OF HOUSING | * | |
| AND URBAN DEVELOPMENT, ET AL., | * | CLASS ACTION |
| | * | |

## AMENDED AGREED FINAL JUDGMENT

### 1. Notice and Approval

Debra Walker et al. (collectively referred to as "Plaintiffs") and The Housing Authority of the City of Dallas, Texas (DHA), a Defendant herein, consent to the entry of this Amended Agreed Final Judgment (the "Judgment"). The Court finds that, as required by Federal Rule of Procedure 23, this Judgment is fair, reasonable and adequate and that class members were given notice of the amendment and the hearing in a reasonable manner and with a reasonable time to object. The Court finds that this Judgment and the attached Walker Settlement Voucher Implementation Plan 2019 (the "SVIP 2019") are a fair, reasonable and adequate resolution of the Plaintiffs' Motion for Relief from DHA's Non-Compliance with Remedy Orders.

### 2. Denial of Liability

DHA denies any liability with respect to any matter alleged against it to which it has not previously entered an admission of liability in the record in this case

### 3. Effect of Prior Orders

The Agreed Final Judgment entered December 21, 2004 and all other District Court orders granting relief against DHA shall be and are vacated as between DHA and the Plaintiff class except to the extent those orders are specifically continued in this Judgment as set forth

below. The vacation of any order by this Judgment does not affect the rights, obligations, or remedies of any party or person except DHA, Plaintiffs, and the Plaintiff class. Furthermore, the vacation of any order by this Judgment does not affect the legality of any action taken in the past pursuant to those orders or reopen DHA's actions taken pursuant to those orders for litigation by DHA or by any party to the case. The prior orders that continue to obligate DHA, either partially or as modified below, in this Judgment are these:

**A.  Settlement Stipulation and Order (March 8, 2001, Dkt. No. 2123)**

The following portions of this Order identified or restated below, except where modified or otherwise noted, remain in effect:

1.  "The [Walker Settlement] Vouchers will be administered by DHA in its capacity as a Section 8 Administrator pursuant to its Section 8 voucher ACC with HUD in accordance with the terms of this Order."

**. . . .**

4.  "Reservation of 3,205 units pursuant to this order will not reduce the reservation of additional Section 8 units that otherwise would be made to DHA. Funding for the [Walker Settlement] Vouchers shall be renewed in accordance [with] applicable law and regulations for renewal of expiring consolidated ACC funding increments, pursuant to 24 C.F.R. § 982.102, as may be amended.  Pursuant to HUD's current regulations, the [Walker Settlement] Vouchers shall be included in the baseline number of vouchers used for calculation of voucher renewal funding.  HUD may, in its sole discretion, reduce DHA's baseline by one voucher for each [Walker Settlement] Voucher that is not used in compliance with the terms of this Order." Once a class member who has received a Voucher ceases to participate in the Section 8 program, the Voucher shall no longer be subject to the requirements of this Order but shall be subject only to the requirements of the ACC and the statutes and regulations that govern the Section 8 program.

**AMENDED AGREED FINAL JUDGMENT**                                             **PAGE 2**

. . . .

9.   Paragraph 9 of this Order remains in effect where it required HUD to "grant DHA a one-time payment of an additional $1000 in administrative fees (extraordinary fees) for each of the 3,205 [WSVs] provided for in [the Settlement Stipulation and Order]…." These extraordinary fees may be used for the following three purposes, or for such other purposes as HUD, in its sole discretion, permits: (i) to pay per unit bonus to first-time landlords of units in an ECT; (ii) to assist class members in payment of lease application fees, security deposits, and utility deposits; and/or (iii) to provide Mobility Financial Assistance for class members as further defined in this Judgment. DHA asserts that as of the date of this Judgment, HUD has not confirmed that it has paid $1,100,000 of this $3,205,000 to DHA.

Paragraph 10 of this Order remains in effect where it states that "HUD hereby authorizes DHA to use its [HCV] administrative fee reserves, if any, to assist class members with security deposits, moving expenses, and utility deposits." In addition, DHA has voluntarily agreed to use $3,000,000 of its administrative fee reserves ($150,000 of which DHA has already been made available) (referred to herein as the "Mobility Funding") as discussed in Paragraph 9 above for Mobility Financial Assistance (as defined in the SVIP 2019, attached hereto). Notwithstanding this, DHA shall not hereafter be required to use its administrative fee reserves in connection with this litigation. Further, any and all financial obligations of DHA under this Order are satisfied by DHA providing the Mobility Funding, as described herein, and in the SVIP 2019.  The use of the Mobility Funding will be governed by the SVIP 2019. In addition, DHA will work with ICP to identify and apply for grants that may be available to provide for mobility assistance.

### B.  Order Approving Plan for DHA's Implementation of HUD Settlement as DHA's Section 8 Substitution Plan (April 26, 2001; Dkt. No. 2143)

The following portions of this Order restated below, except where modified or otherwise

---

**AMENDED AGREED FINAL JUDGMENT**                                        **PAGE 3**

noted, remain in effect:

".  .  .  .

"(1) DHA shall administer the HUD Settlement Vouchers [herein referred to as "Walker Settlement Vouchers" or "WSVs"] and the funding provided under the Settlement Stipulation and Order [03/08/2001, Dkt. No. 2123] in compliance with the terms of that Order," but only as identified or restated herein.

"(2) DHA shall award HUD Settlement Vouchers [WSVs] only to class members who receive an offer of a unit in a "'predominantly white area.'" For the purposes of this Judgment, the term "predominantly white area," which is now referred to as an "Eligible Census Tract" or "ECT," means "a census tract that is not a 'Minority Neighborhood' (as that term is used by HUD) in which the percentage of persons of particular racial or ethnic minority, as based on the most recent decennial census, is at least 20 points higher than that minority's percentage in the 'Housing Market' as a whole." As used in this Judgment, "Housing Market" is defined as the City of Dallas. In addition, an Eligible Census Tract must have a poverty rate at or below the average poverty rate for the City of Dallas as based on the most recent U.S. Census Bureau decennial census or the most recent American Community Survey data. In addition, except as previously approved or otherwise agreed to by the parties, the tract must have no public housing other than scattered-site single-family homes. Tracts that the Plaintiffs and DHA agree should be treated as a "predominantly white area" or ECTS are also eligible ECTs.

".  .  .  .

"(7) The Section 8 vouchers and mobility counseling services provided pursuant to the Settlement Stipulation and Order and this Order shall only be offered to and used by households whose Head of Household is a class member as defined in the Agreed Order Certifying Rule

**AMENDED AGREED FINAL JUDGMENT**                                    **PAGE 4**

23(b) (2) Class, entered January 19, 2001."

. . . .

"(9) The mobility counseling services to be provided to the participating households shall include:"

. . . .

"b) information about the services available including the various forms of financial assistance for deposits, etc.,"

. . . .

"c) landlord recruitment efforts in eligible areas.

. . . .

"g) the information necessary to enable the class members to recognize possible housing discrimination they might encounter in their search for housing such as a refusal to rent to families with children, a reluctance or refusal to rent to families with older children, unreasonable credit or rental history requirements, high income requirements, unreasonable security deposit requirements, and the refusal to accept Section 8,"

"h) cooperation with public and private fair housing organizations in combating illegal discrimination against class members participating in the housing opportunity program,"

. . . .

"(11) DHA shall base the voucher payment standard for the vouchers issued under this Order on the highest Percentile Fair Markets approved by HUD for the Dallas area and up to the 125% of the Fair Market Rent as approved by HUD under the Settlement Stipulation and Order as needed to obtain units for the participating households." The parties agree that the current payment standard currently applicable to Walker Settlement Vouchers is up to 125% of Small-

Area FMR ("SAFMR"). The parties agree that this payment standard may be changed in future court-approved Walker Settlement Voucher Implementation Plans.

"(12) No dwelling units may be made available to class members under the Settlement Voucher program [unless they are in compliance with current HUD Section 8 inspection standards]."

"(13) DHA shall include a provision in the Housing Assistance Payment contract for each unit assisted pursuant to the Settlement Voucher program set out in this Order that DHA will pay late fees [in accordance with 42 U.S.C. 1437f(o)(10)(D), (E), 24 C.F.R. 982.451(b)(5)(ii)(A), and the applicable Housing Assistance Payment contract and DHA's Administrative Plan] if DHA's portion of the contract rent is not timely paid ."

The Parties agree to continue the practice of agreeing to and submitting for the Court's approval Walker Settlement Voucher Implementation Plans ("SVIPs" or "Plans") that govern the Walker Settlement Voucher program and amending or submitting any such SVIPs as the need arises.

With reference to the 2001 Substitution Plan Order (04/26/2001; Dkt. No. 2143) paragraphs 3, 4, 5 and 6, the Parties agree that any and all financial obligations of DHA under those paragraphs are satisfied upon DHA providing $3,000,000 in Mobility Funding ($150,000 of which DHA has already been made available) as set out in this Judgment and the SVIP 2019 .

### C. Agreed Order Certifying Rule 23(b)(2) Class (January 19, 2001, Dkt. No. 2113)

This Order certified the applicable class for this case and made certain findings of fact. The entirety of this Order remains in effect, with the pertinent portions restated below.

This Order defines the applicable class as follows:  "all African-American persons who, in the past, currently, or in the future: (i) lived or live in public housing, or (ii) received or

receive [HCV] assistance, or (iii) applied or will apply for public housing or [HCV] assistance pursuant to a program."

In addition, this Order states the Court's findings: "that the number of class members exceeds several hundred; that there are questions of law and fact that are common to the class, including those arising out of the matters resolved by the 'Settlement Stipulation and Order'; that the claims of the class representatives are typical of the claims of the class; that the named plaintiffs and their counsel will represent, and have fairly and adequately represented the interests of the class; and that HUD has acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.";

### D. Order Approving Creation of Charitable Trust and Transfer of Funds (May 19, 2005, Dkt. No. 2551).

This Order remains in effect, with the clarification that the $3,000,000 in Mobility funding for Mobility Financial Assistance, $150,000 of which DHA has already been made available, as part of this Judgment, is not part of the Trust and is not intended by DHA and the Plaintiffs and plaintiff class to be part of the Trust;

### E. Agreed Order Granting Plaintiffs' Motion to Name ICP Housing Fund Administrator (December 21, 2004, Dkt. No. 2521).

This Order remains in effect except for those provisions requiring DHA to take certain actions as DHA has fully complied with these actions.

### 4. Pending motions denied

Any and all motions filed by any party and pending resolution as of the date of this Judgment are denied with prejudice as to any relief requested in those motions to the extent that relief is not granted in this Judgment and any attachment hereto. This does not prejudice any parties' attempt to seek to enforce this Judgment at a later date as may be necessary. Upon completion of the obligations set out in this Judgment, DHA shall be entitled to a final dismissal

of this case.

### 5. Release from Judicial Supervision

DHA is hereby released from all remaining judicial supervision except to the limited extent set forth in this Judgment and the orders remaining in effect under this Judgment.

### 6. Walker Settlement Vouchers

HUD provided 3,205 Walker Settlement Vouchers ("WSVs") to DHA to administer. All of these vouchers were issued to class members. The continuing administration and use of the WSVs are governed by: the March 8, 2001 HUD Settlement Stipulation and Order; the April 26, 2001 Order Approving Plan for DHA's Implementation of HUD Settlement as DHA's Section 8 Substitution Plan as limited by this Judgment, Memorandum Opinion and Order, (5/17/2007: Dkt No. 2622); and the Walker Settlement Voucher Implementation Plan in effect at any given time.

Under these requirements, WSVs shall be reassigned when the WSV recipient is no longer eligible for the WSV but remains a participant in the Housing Choice Voucher program or another DHA housing program. One instance in which the WSV becomes available for reassignment is after a WSV participant moves to a location that is not in an Eligible Census Tract and remains a participant in the DHA Housing Voucher Program. A WSV is not eligible for reassignment if the WSV participant, while residing in an Eligible Census Tract, terminates or is terminated from participation in the voucher program and is no longer a participant in any DHA housing program. When this occurs, that particular WSV is eliminated and the total number of WSVs is thereby reduced.

As of the date of this Judgment, DHA has 2,646 Walker Settlement Vouchers to administer, which includes Walker Settlement Vouchers that are either in use or available for re-issuance. DHA will continue to re-issue Walker Settlement Vouchers to each class member on

the waiting list who leases in an Eligible Census Tract until there has been a determination that the WSV participant, while residing in an Eligible Census Tract, terminates or is terminated from participation in the voucher program and is no longer a participant in any DHA housing program and that particular Walker Settlement Voucher is eliminated and the total number of Walker Settlement Vouchers is thereby reduced. DHA shall administer the WSVs subject to the re-issuance provision set out in the SVIP 2019 approved as part of this Judgment. Class Members with a re-issued WSV shall receive WSV Mobility Financial Assistance and the payment standard of up to 125% of SAFMR, or until the payment standard is revised in a subsequent Walker Settlement Voucher Implementation Plan. When there are no WSVs in use and no WSVs that are available for re-issuance, then the Order Approving Plan for DHA's Implementation of HUD Settlement as DHA's Section 8 Substitution Plan shall terminate without further action of the Court.

In the event DHA is instructed by HUD to suspend or cease re-issuance of any Settlement Voucher based on a lack of HUD providing Housing Assistance Payment funding due to DHA entering "Shortfall" funding status (as that term is used by HUD) or for any other reason, DHA will provide Plaintiffs' Class Counsel with the documents containing the information relating to the HUD Shortfall funding or to any other reason for HUD's instruction to suspend or cease re-issuance of Settlement Vouchers.

### 7. Mobility Financial Assistance

DHA will provide $3,000,000 ($150,000 of which DHA has already been made available) for Mobility Financial Assistance. The Mobility Financial Assistance shall be used as authorized in the SVIP 2019, which is attached hereto.

**8. Area of Operation**

DHA's area of operation for its Housing Choice Voucher Program including the Walker Settlement Voucher program, or such other program as may be substituted thereafter by the United States Congress or by HUD, shall continue to be the following seven counties: Dallas, Tarrant, Denton, Collin, Kaufman, Rockwall, and Ellis.

**9. Project Based Section 8 Units Required**

DHA shall maintain the existing Walker Project Based vouchers (WPBVs) under contract until the term of each existing contract expires.  DHA shall leave open a request for proposals or issue new requests for proposals to encourage applications for WPBV units. WPBVs shall be counted as part of the 2,646 Walker Settlement Vouchers.

The location for the WPBV units shall not include any sites in locations with environmental conditions, housing conditions, crime rates, or concentrations of persons with incomes below poverty level that are substantially inferior to the conditions in which low income white households receive HUD funded housing assistance in predominantly white neighborhoods. The locations for the WPBV units shall not be chosen by site selection policies, practices, or decisions that have racially segregative effects, but shall be selected and agreed to by the parties. Subject to funding availability, each resident household of these WPBV units shall be issued a HCV, if, at any time after the initial lease term, the resident household gives DHA written notice requesting the issuance of the voucher. DHA shall give each resident household written notice of this right at the time of signing the initial lease.

**10. Public Housing Unit Limitation**

No more than 950 units of public housing may be located on DHA's West Dallas project site, which is defined as the area within the boundaries of the following streets: Singleton to

Canada Drive, and North Hampton to Westmoreland Drive.

### 11. WSV Waiting List Availability

DHA will issue WSVs to Applicants on the WSV Waiting List. Persons eligible to receive a WSV may be on both the WSV waiting list and the HCV waiting list. DHA will select eligible Applicants pursuant to the SVIP in effect at the time.

Persons otherwise eligible for the WSV Program but choosing not to apply to or participate in the WSV Program may continue to participate in the HCV Program. If persons eligible to receive a WSV choose to apply to the WSV Program, such persons will not lose their place on any HCV Program waiting list until they occupy a unit under the WSV Program. Eligible persons already on the HCV Program who choose to participate in the WSV Program will not lose their regular housing voucher until they occupy a unit under the WSV Program.

### 12. Access for Inclusive Communities Project (ICP)

DHA shall provide ICP, the Housing Fund Administrator, with access to its WSV briefings and WSV waiting lists, and programs providing mobility assistance to class members. This includes ICP making presentations at both the WSV participant briefings and the Housing Choice Voucher briefings.

### 13. Reporting Requirements

DHA will provide the following reports to Plaintiffs' counsel for the time periods identified below and in a computer readable format appropriate to the information being provided and with the information more specifically identified in the SVIP 2019 and Exhibit 2 to the same:

### A.  Monthly Reports

1.  <u>Walker Client Contact Report</u>—reflecting WSV program activity (e.g., number of new WSV briefings and relocation briefings conducted) and WSV Participant contact (e.g., number of new and relocations Walker Participants attending briefings;

2.  <u>Active HAP Contracts Report</u>—reflecting all active HAP contracts;

3.  <u>Landlord Services Contact and Walker Activity Report</u>—reflecting eligible property types and numbers added to vacancy list for WSV program and activities undertaken by DHA personnel related to the WSV program;

4.  <u>Walker Client Cessation of Participation 50058 Report</u>—reflecting WSV Participants terminated, voluntarily or involuntarily, from the program during the preceding month and providing the reason for the termination, the DHA program that the WSV client subsequently began to participate in, if any, and the address and census tract of the location at which the WSV was residing at the time of the termination, and the reason for the termination;

5.  <u>Walker Client 50058 Report</u>—reflecting 50058 data recorded for active WSV Participants;

6.  <u>Walker Vouchers Exceeding 60 Days</u>—reflecting vouchers that have been issued for over 60 days; and

### B.  Quarterly Report

<u>WSV Financial Assistance Report</u>—reflecting for each payment of financial assistance for any WSV Participant the amount of payment, the purpose of the payment, the name, address, census tract, and DHA client number of the WSV Participant, and the payee for the payment.

### C.  Bi-Annual Report

<u>HCV 50058 Report</u>—reflecting 50058 data recorded for active HCV voucher

Participants. These "HCV 50058 Reports" shall be provided on a bi-annual basis on or by July 31 and January 31 of each year. The report shall provide the information for each voucher recipient participating in the DHA voucher program between January 1 and June 30 for the July 31 report and shall provide the information for each voucher recipient participating the DHA housing choice voucher program between July 1 and December 31 for the January 31 report.

### D.  Annual Reports

<u>Landlord Contact Report Summary</u>—reflecting certain categories of information regarding DHA's interactions with Landlords under the WSV and HCV programs.

<u>DHA Annual Report</u>—describing DHA's actions taken to comply with this Judgment, the expenditure of the funds for mobility financial assistance made available in this Judgment, and any and all agreements reached by the parties during the calendar year. DHA will file an annual report with the Court and provide a copy to Plaintiffs' counsel within 30 days of the end of each calendar year, or as extended by agreement or court approval.  The obligation to file the annual report shall terminate when DHA has completed its obligations under this Judgment.

<u>Plaintiffs' Counsel Fee Report</u>—reflecting in reasonable detail the attorney's fees Plaintiffs' Counsel seeks to recover that were incurred in the previous year.

### 14. Future Audits

DHA shall require that the future single audits conducted in accordance with 2 CFR Part 200-Uniform Administrative Requirements, Cost Principles, and Audit Requirements for federal awards, as may be amended in the future, will include DHA's compliance with the terms of this Judgment  and, the currently effective Walker Settlement Voucher Implementation Plan for the expenditure of the $3,000,000 ($150,000 of which DHA has already been made available) in

Mobility Financial Assistance for Walker Settlement Voucher Clients.[1] This audit requirement shall begin with DHA's 2018 Fiscal Year. DHA will provide a copy of the audit to Plaintiffs' counsel upon its completion.

### 15. Documents Available upon Request

DHA shall make the following documents available to Plaintiffs' counsel upon request by Plaintiffs' counsel: all correspondence between HUD and DHA containing specific information about the availability, use, or operation of the Walker Settlement Voucher program and the vouchers for which Walker Settlement Voucher funding is provided.

### 16.  Approval of Agreed Settlement Voucher Implementation Plan 2019

The Agreed Settlement Voucher Implementation Plan 2019, attached hereto, is approved.

### 17. Notice of Non-Compliance

In the event that Plaintiffs contend that DHA is not in compliance with the terms of this Judgment, Plaintiffs' counsel shall provide written notice to DHA setting forth facts supporting the allegation of noncompliance, and DHA and Plaintiffs' counsel shall then use their best efforts to resolve such allegations of noncompliance without intervention by the Court.  In the event the issues are not resolved within 30 days of Plaintiffs' notice to DHA or such time as may be extended by the parties, Plaintiffs may move the Court for relief.

---

[1] As used herein and in the SVIP, the term "Walker Client(s)" shall mean, as applicable, "Applicants" (meaning a person or family who is eligible for a Walker Settlement Voucher, and has either applied for a Settlement Voucher, but, has yet to lease a unit under the WSV Program, or resides in a R/ECAP census tract [as that term is defined by HUD] as a current HCV participant and has agreed to transfer to the WSV Program), or "Participants" (meaning a person or family who has obtained a Walker Settlement Voucher and has leased a unit under the WSV Program).

**AMENDED AGREED FINAL JUDGMENT**                                      **PAGE 14**

### 18. Retention of Jurisdiction

The Court maintains jurisdiction to consider and decide any motions for enforcement related to DHA's compliance with the Judgment, attorneys' fees and litigation expenses and other necessary actions . The retained jurisdiction includes the jurisdiction to decide Plaintiff's request for attorney fees related to Plaintiffs' Motion for Relief From DHA's Non-Compliance with Remedy Orders (Doc. No. 2787) and fees related to the negotiations on the subject matter of this Judgment.

### 19. Other Relief Denied

Any relief previously requested by any party that is not specifically granted or addressed herein shall be and is denied. This provision does not bar Plaintiff's request for attorney fees related to Plaintiffs' Motion for Relief From DHA's Non-Compliance with Remedy Orders (Doc. No. 2787) and fees related to the negotiations on the subject matter of this Judgment.

**SO ORDERED:**


_____

**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**


**AGREED:**

_____

**MICHAEL M. DANIEL**
**LAURA B. BESHARA**
Counsel for Plaintiffs

_____

**KATIE ANDERSON**
Counsel for the Housing Authority
of the City of Dallas, Texas

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEBRA WALKER, ET AL. | * | |
| | * | |
| v. | * | |
| | * | 3:85-CV-1210-O |
| U.S. DEPARTMENT OF HOUSING | * | |
| AND URBAN DEVELOPMENT, ET AL., | * | CLASS ACTION |
| | * | |

**AGREED SETTLEMENT VOUCHER IMPLEMENTATION PLAN 2019**

## I.
## INTRODUCTION

The U.S. Department of Housing and Urban Development (HUD) provided the Housing Authority of the City of Dallas, Texas (DHA) 3,205 vouchers pursuant to HUD's Settlement Stipulation and Order entered March 8, 2001 in the U.S. District Court, Northern District of Texas, Dallas Division ("Settlement Stipulation"). These Settlement Vouchers (also referred to as "Walker Settlement Vouchers" or "WSVs") replace 3,205 public housing units DHA was required to develop in Predominantly White Areas (now referred to as "Eligible Census Tracts") as stipulated in the Remedial Order Affecting DHA, entered February 7, 1995.

This Settlement Voucher Implementation Plan (the "Plan" or "SVIP") is created pursuant to the Amended Agreed Final Judgment to which this Plan is attached (the "Judgment").

## II.
## ELIGIBLE CENSUS TRACTS

DHA administers the Walker Settlement Voucher Program by assisting Class Members who participate in the Program in leasing housing of their choice in "Eligible Census Tracts" (formerly referred to as "Predominantly White Areas") and offers financial incentives, as defined below, to owners who make their rental properties in Eligible Census Tracts available to "Walker

Clients." As used herein, the term "Walker Client(s)" shall mean, as applicable, "Applicants" (meaning a person or family who is eligible for a Walker Settlement Voucher, and has either applied for a Settlement Voucher, but, has yet to lease a unit under the WSV Program, or resides in a R/ECAP[1] census tract as a current HCV participant and has agreed to transfer to the WSV Program) or "Participants" (meaning a person or family who has obtained a Walker Settlement Voucher and has leased a unit under the WSV Program).

As used in this Plan, the term "Eligible Census Tract" or "ECT," (formerly referred to as a "Predominantly White Area") means "a census tract that is not a ''Minority Neighborhood' (as that term is used by HUD) in which the percentage of persons of particular racial or ethnic minority, as based on the most recent decennial census, is at least 20 points higher than that minority's percentage in the 'Housing Market' as a whole." As used in this Plan, "Housing Market" is defined as the City of Dallas. In addition, an Eligible Census Tract must have a poverty rate at or below the average poverty rate for the City of Dallas as based on the most recent U.S. Census Bureau decennial census or the most recent American Community Survey data. In addition, except as previously approved or otherwise agreed to by the parties, the tract must have no public housing other than scattered-site single family homes. Tracts that the Plaintiffs and DHA agree should be treated as a "predominantly white area" or ECTS are also eligible ECTs. Units in the Eligible Census Tracts in Collin, Dallas, Denton, Ellis, Kaufman, Rockwall and Tarrant counties are eligible locations for Walker Clients and for financial assistance to Walker Clients.

Attached as Exhibit 1 to the Plan is the current list of the 2010 Eligible Census Tracts in

---

[1] "R/ECAP" as used herein refers to "Racially or Ethnically Concentrated Areas of Poverty" as that term is used and defined by HUD.

the seven-county area and the calculated 2010 U.S. Census data status of those tracts as Eligible Census Tracts under the HUD Settlement Stipulation. Further, the Parties agree that tracts 130.04 (public housing in tract), 152.05 (Irving), 181.05 (Garland), 181.41 (Garland), 192.06 (UTD), 317.09 (40 units of public housing), and 318.04 (UTD) shall be considered Eligible Census Tracts under the Judgment and this Plan.

The 2020 U.S. Decennial Census data will be used to adjust current Eligible Census Tracts when the census tract population data is available. The most current American Community Survey poverty data will also be used to adjust the Eligible Census Tracts once the 2020 U.S. Decennial Census data is available for racial demographics.

### III.
### MOBILITY FUNDING FOR MOBILITY FINANCIAL ASSISTANCE

The "Mobility Funding" committed by DHA for "Mobility Financial Assistance," as defined by this Section under this and any subsequent Agreed Settlement Voucher Implementation Plan or amendment is $3,000,000 ($150,000 of which DHA has already provided) as of the date this Plan is approved by the Court. The Mobility Funding is available only for the payment of the following elements of Mobility Financial Assistance for Walker Clients or as otherwise defined by this Plan:

i. Application fees

ii. Security deposits,

iii. Landlord bonuses,

iv. Utility Deposits,

v. Moving expenses,

vi. Mobility Counseling Software, and

vii. Administration Costs.

The Mobility Funding for the Mobility Financial Assistance shall be spent in accordance with this Plan.

If and when DHA exhausts the Mobility Funding for Mobility Financial Assistance committed to in the Judgment and defined therein, DHA will have no further obligation to provide Mobility Funding for Mobility Financial Assistance or any other monetary assistance under the terms of the Judgment or any other order previously entered in this case.

### 1. $3,000,000 Available for Mobility Financial Assistance

DHA will provide $3,000,000 for Mobility Financial Assistance for Walker Clients. Because DHA has already provided $150,000 of Mobility Financial Assistance out of the $3,000,000 it has committed to provide, $2,850,000 is the amount of Mobility Financial Assistance that will be available as of the date this Plan is approved by the Court.

DHA will not deny Mobility Financial Assistance to a Walker Client because Inclusive Communities Project, Inc. (ICP) is providing mobility search assistance and other non-financial mobility counseling to the Walker Client. DHA will not deny Mobility Financial Assistance to a Settlement Voucher Walker Client because the Walker Client is participating in the ICP sublease/guarantor program.

### 2. Application fees

DHA will make Mobility Financial Assistance available to pay rental housing application fees for a Walker Client searching for housing in an Eligible Census Tract. Application fee assistance will be limited to $150 in the aggregate for any one Walker Client or as otherwise agreed in writing by Plaintiffs' Class Counsel and DHA and/or its counsel. Payment will be made directly to the owner or reimbursed to the Walker Client, at the option of the Walker Client, upon receipt of proof of payment.

### 3. **Security Deposit Assistance**

A.      Upon request and execution of the HAP contract, DHA will provide Mobility Financial Assistance to Walker Clients to pay security deposits, which shall be limited to one payment per Walker Client. The amount of this assistance will be based upon the size of the unit shown on the Settlement Voucher, or the unit size selected, whichever is lower. The payment will be equal to the lesser of the deposit charged by the owner or the following, or as otherwise agreed in writing by Plaintiffs' Class Counsel and DHA and/or its counsel:

One Bedroom: up to $250,

Two Bedrooms: up to $750,

Three Bedrooms: up to $1,200,

Four Bedrooms: up to $1,500,

Five Bedrooms: up to $1,800,

Six Bedrooms: up to $2,000.

B.      DHA will not pay Security Deposit Assistance on behalf of a Walker Client for amounts that are higher than what is charged to unassisted tenants in the private rental market. Payment for security deposit assistance will be made directly to the owner or reimbursed to the Walker Client, at the option of the Walker Client, upon receipt of proof of payment.

C.      Under state law, the landlord may deduct from the Security Deposit Assistance, the amount for which the Walker Client is legally liable under the lease. Texas Property Code, Section 92.104. State law also requires the landlord to provide an itemized statement to the Walker Client setting out the cost of repairs, if any, and an explanation of all amounts deducted from the security deposit when the tenant moves. The refund of the Security Deposit Assistance will be made directly to the Walker Client.

### 4.  Landlord Bonus Incentive Payments

DHA may use Mobility Funding to pay an additional landlord incentive bonus payment to owners with properties in Eligible Census Tracts for Walker Clients. DHA may pay up to $1,000 or an amount equal to the first month's rent, whichever is lower, as a landlord incentive bonus, if needed, to obtain a unit for the Walker Client.

### 5.  Utility Deposits

Upon request and proof of payment, DHA will reimburse Walker Clients using Mobility Funding for utility deposits up to $200 per family.

### 6.  Moving Expenses

Upon request, DHA will provide Mobility Financial Assistance to Walker Clients to pay moving expenses up to $200 per family.

### 7.  Mobility Counseling Software

Unless otherwise agreed upon between the parties, DHA may use up to $250,000 of Mobility Funding to use in development of software and a mobile application for use by Class Members and other DHA clients to identify and locate affordable housing in areas of high opportunity.

### 8.  Administration Costs

DHA is authorized to spend no more than $150,000 per year to pay the salary and benefits of DHA employees to assist in administering this Plan. The $150,000 per year may also be used to pay costs related to updating and administering the waiting list (postage, software costs, etc.).

## IV.
## ISSUANCE OF SETTLEMENT VOUCHERS

**1.  Number of Settlement Vouchers in Use Or Available for Re-Issuance**

As of the date of this Plan, DHA has 2,646 Settlement Vouchers that are either in use or available for re-issuance to Class Members.

**2.  Availability of Settlement Vouchers for Re-issuance**

A.      Each of the remaining Settlement Vouchers will remain available for re-issuance as a Settlement Voucher to another class member when the class member using the Settlement Voucher transfers to any other Dallas Housing Authority program. The withdrawal from the Walker Settlement Voucher program because of a Walker Client's inability to obtain a unit within the allotted or extended period is neither a voluntary nor an involuntary termination of participation in the Walker Settlement Program for purposes of the reassignment of the Walker Settlement Voucher. DHA will provide to Plaintiffs' Counsel a monthly report with a list of Walker Clients that have been sent a notice of program termination.

B.      WSVs shall be reassigned when the WSV recipient is no longer eligible for the WSV but remains a participant in the Housing Choice Voucher program or another DHA housing program. One instance in which the WSV becomes available for reassignment is after a WSV participant moves to a location that is not in an Eligible Census Tract and remains a participant in the DHA Housing Voucher Program. A WSV is not eligible for reassignment if the WSV participant, while residing in an Eligible Census Tract, terminates or is terminated from participation in the voucher program and is no longer a participant in any DHA housing program.

C.      A Settlement Voucher will become a regular Housing Choice Voucher when the class member using the Settlement Voucher ceases receiving benefits from any DHA housing program, whether such cessation of benefits is voluntarily or involuntarily. DHA will add

language in WSV termination notices to Walker Clients informing them of option to contact ICP. The ICP telephone number provided will be (214) 658-1339; the ICP email address provided will be: map@inclusivecommunities.net.

### 3. R/ECAP Priority Procedure and Waiting List Management

DHA will offer and issue Walker Settlement Vouchers to Class Members who meet the HUD HCV program eligibility criteria in accordance with the following priorities: First priority will be to regular HCV participants currently residing in a R/ECAP area; Second priority will be to applicants selected from DHA's WSV waiting list with consideration of whether those families are residing in a R/ECAP area; Third priority will be to all other applicants on DHA's WSV waiting list.

### 4. Eligibility Determination for Walker Settlement Voucher.

The Substitution Plan limits participation in the Program to African Americans and such eligibility shall be determined by the race of the Head of Household. DHA will select eligible applicants based on DHA's current Section 8 Administrative Plan.

### 5. ICP Referral Reassignment

A. ICP will provide to the DHA Walker Coordinator (or other appropriate DHA official or employee) the names of Class Members with a Housing Choice Voucher that want a reassigned Settlement Voucher and have a Request for Tenancy Approval ("RFTA") for a unit in an Eligible Census Tract. This process only applies if WSV are available for re-issuance.

B. DHA must verify that the unit is in an Eligible Census Tract and that the family is an eligible class member. If verified, the RFTA shall be stamped "WALKER REASSIGNMENT" and processed as a Walker Settlement Voucher, subject to DHA's internal process and procedures. The applicable WSV payment standard will begin at the time of the effective date of

the HUD Form 50058 created to implement such reassignment.

**6. Retaining a Settlement Voucher After Census Tract Location Becomes Ineligible (Conversion)**

A.      After the determination of census tract eligibility for Settlement Voucher placement is made pursuant to the 2020 U.S. Decennial Census, DHA will prepare a list of Walker Clients it asserts are no longer located in Settlement Voucher Eligible Census Tracts. DHA will provide to Plaintiffs' Class Counsel the list of these Walker Clients that includes the name of the voucher holder, the DHA client number of the voucher holder, the street address of the unit including street name, street number, zip code, the new census tract number and the census tract number under the 2010 U.S. Decennial Census.

B.      DHA will send a notice to each current Walker Client who is no longer living in an Eligible Census Tract. The notice will advise the Walker Client that their current WSV will change to a regular Section 8 Housing Choice Voucher unless the Walker Client notifies DHA that she or he wishes to move to a unit in a location in which the WSV can be used. The notice should state that the reason is because of changes in U.S. Census data that make the tract ineligible for Settlement Vouchers. DHA's notice should inform the household that the change does not mean the family will lose their voucher. The notice should state that the change will cause the voucher to become a regular Housing Choice Voucher without the Walker Settlement Voucher payment standard unless the household moves to an eligible location before the second regular re-examination after the date the parties agree to the Eligible Census Tracts or the Court orders the implementation of new Eligible Census Tracts. This deadline can be extended to the expiration of the current lease term or for other good cause, such as waiting until the end of a school year. DHA will send a copy of each notice to Plaintiffs' Class Counsel at the same time the notice is sent to the Walker Client.

C.      The notice should provide the Walker Client with the name, phone number, and email address of a DHA employee who can answer questions about the notice and the change. The notice should provide the Walker Client with the Inclusive Communities Project, Inc.'s (ICP) availability to provide information about the notice and the change. The ICP telephone number to be provided is (214) 658-1339. The ICP email address to be provided is: map@inclusivecommunities.net.

D.      The notice should inform the Walker Client that if she or he wants to continue as a Walker Client, then mobility counseling—including search assistance and financial assistance—may be available for a move to an Eligible Census Tract. The Mobility Financial Assistance for conversion Walker Clients may include a security deposit payment if the Walker Client  has not received previous security deposit assistance. The notice should state that ICP's mobility counseling and search assistance is also available to the Walker Client.

E.      If a Walker Client does not move to an eligible census tract and becomes a regular Housing Choice Voucher participant, the Settlement Voucher is available for re-issuance to another class member. DHA will offer the number of vouchers for re-issuance to current HCV participants living in R/ECAP areas, then to current HCV participants living in a Walker ECT.

### 7.  Relocation Does Not Terminate Settlement Voucher

The continuation of a class member's participation in the Settlement Voucher program by the class member's relocation from a census tract that becomes ineligible because of a change in relevant U.S. Census data for that tract is neither the termination of participation in the Walker Settlement Voucher program nor the re-issuance of a Settlement Voucher.

**V.**
**ORIENTATION & ELIGIBILITY BRIEFING**

**1.  Information Provided**

A.      DHA, with ICP's participation, will provide an orientation briefing packet with information on Settlement Voucher housing opportunities for Class Members. DHA will provide information on the benefits and limitations of the Settlement Voucher Program. The benefits may include but are not limited to:

a.  The information required by 24 C.F.R. § 985.3(g), 24 C.F.R. § 982.301(a)(3) and 24 C.F.R. § 982.301(b) (11), (15).

b.  opportunity to live in good quality, safe neighborhoods with access to good schools and employment prospects;

c.  monetary assistance to defray the cost of application fees, security deposits, and moving expenses, as available;

d.  higher payment standards to defray the cost of higher rents;

e.  assistance and counseling in locating housing;

f.  financial incentives to prospective landlords.

B.      DHA will provide information on the following limitations of the Settlement Voucher program:

a.  Settlement Vouchers must always be used in Eligible Census Tracts;

b.  Walker Clients must find housing in the Eligible Census Tracts in Collin, Dallas, Denton, Ellis, Kaufman, Rockwall or Tarrant Counties;

c.  Walker Clients will not be able to use their Settlement Vouchers to move outside of these areas under the portability feature of the Housing Choice Voucher Program;

d.   Landlords in Eligible Census Tracts generally may have more stringent screening criteria and may be unwilling to lease to anyone with a criminal background, poor credit, and/or rental history absent a guarantor or higher security deposit; and

e.   Class members may encounter discrimination in their search for housing. DHA asks that any Class Members who believe they are being discriminated against by landlords to inform their DHA contact person. Class members are also encouraged to report possible discrimination to HUD or the City of Dallas Fair Housing Offices

DHA will brief Walker Clients and provide information regarding the WSV Program, DHA policies and procedures, fair housing, and other information concerning locating housing in Eligible Census Tracts.

### 2.  Search Period

Each Walker Client will be authorized to search for suitable housing in Eligible Census Tracts for 120 days.   During the search period, DHA, with the assistance of ICP, will offer assistance to evaluate problems encountered during their initial housing search.

### 3.  Cooperation with ICP

DHA will continue to provide ICP with access to its Housing Choice Voucher Program briefings and Settlement Voucher briefings and waiting list briefings as part of ICP's program providing mobility assistance to Plaintiff Class Members. DHA will provide ICP with a copy of the sign-in sheet from any Walker Settlement Voucher briefing.

## VI.
## PAYMENT STANDARD

The payment standard for Settlement Vouchers is up to 125% of the relevant SAFMR. Upon HUD publication of new SAFMRs, the payment standard based on those SAFMRs shall be effective no later than three months immediately following HUD's final publication of the SAFMRs for the next fiscal or calendar year and in compliance with 24 C.F.R. 982.503(b).

## VII.
## LANDLORD RECRUITMENT

### 1.  Landlord Outreach

DHA will conduct outreach to landlords with properties in Eligible Census Tracts in DHA's area of operation, which includes Dallas, Tarrant, Denton, Collin, Kaufman, Rockwall, and Ellis counties and provide the landlords with information about the WSV Program, the availability of landlord incentive programs, and work with ICP regarding providing information about its programs including the sublease/guarantor program.

DHA will maintain a record of each contact with a landlord with a property or properties in Eligible Census Tracts that includes any reason given by a landlord for not listing their property as available for Walker Clients. This record shall be made available upon request by Plaintiffs' Class Counsel.

### 2.  Resources About Landlords

DHA's information packet for each Walker Client will include information on available resources regarding landlords or available units and other relevant information to assist Walker Clients in locating and obtaining suitable housing and comply with the requirements of 24 C.F.R. 982.301(b).

## VIII.
## <u>SHORTFALL PROCEDURE</u>

In the event DHA is instructed by HUD to suspend or cease issuance or re-issuance of any Settlement Voucher based on a lack of HUD-provided Housing Assistance Payment funding due to DHA entering "Shortfall" funding status (as that term is used by HUD) or for any other reason, DHA will provide Plaintiffs' Class Counsel with the documents containing the information relating to the HUD Shortfall funding or other reason for the instruction to cease issuance or re-issuance of Walker Settlement Vouchers.

## IX.
## <u>REPORTS AND DOCUMENTS TO BE PROVIDED</u>

DHA will provide the reports, documents, and information required by the Judgment, including those reports identified in Paragraph 13 of the Judgment, in a computer readable format appropriate to the information being provided and including the information as set forth in the document attached as Exhibit 2 to this Plan, which is a template showing the reports DHA will provide under Paragraph 13 of the Judgment and identifying the information that will be provided in those reports.

**AGREED:**

MICHAEL M. DANIEL
LAURA B. BESHARA
Counsel for Plaintiffs

**KATIE ANDERSON**
Counsel for the Housing Authority
of the City of Dallas, Texas

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEBRA WALKER, ET AL. | * | |
| | * | |
| v. | * | |
| | * | 3:85-CV-1210-O |
| U.S. DEPARTMENT OF HOUSING | * | |
| AND URBAN DEVELOPMENT, ET AL., | * | CLASS ACTION |
| | * | |

<u>NOTICE OF PENDING SETTLEMENT OF CLASS ACTION</u>

TO: All African-American persons who, in the past, currently, or in the future: (i) lived or live in public housing, or (ii) received or receive Section 8 assistance, or (iii) applied or will apply for public housing or Section 8 assistance pursuant to a program administered by the Housing Authority of the City of Dallas ("DHA"):

If the characteristics set out above describe you, then you are a member of the class of such persons in this case involving the desegregation of DHA's housing programs. Plaintiffs in the case and DHA have proposed an amendment to the Agreed Final Judgment in this case. If approved by the Court, this settlement will determine the future administration and operation of the Walker Settlement Voucher program that has been a part of the relief for the class since 2001.

The settlement, if approved by the Court, will modify the operation of the Walker Settlement Voucher program by the following changes:

A. DHA will continue to provide financial assistance to eligible Walker Settlement Voucher participants for eligible costs in obtaining housing until the $2,850,000 in funding set out in the proposed Amended Agreed Final Judgment has been spent. These costs may include all or part of application fees, payments to landlords if necessary to obtain housing, utility deposits, security deposits, and a set moving expense. The specific eligibility requirements for this assistance are set out in the proposed Amended Agreed Final Judgment that can be obtained from the sources listed below. DHA will also use up to $150,000 per year from these funds to reimburse its own costs for administration of the Walker Settlement Voucher program. DHA will pay up to $250,000 in a one-time expenditure to develop a mobile application to provide all DHA voucher participants with the ability to identify and locate affordable housing in areas of high opportunity.

B. The total number of Walker Settlement Vouchers either in use or available for use will be 2,646.

C. The Walker Settlement Voucher payment standard will be up to 125% of the Small

1

Area Fair Market Rent for the Zip Code in which the voucher unit is located.

D. Eligible class members living in Racially and Ethnically Concentrated Areas of Poverty will be given a priority in the issuance of Walker Settlement Vouchers.

E. The definition of the census tracts eligible for the use of Walker Settlement Vouchers will change after the 2020 U.S. Census to include only census tracts with a poverty population percentage less than the poverty population percentage of the City of Dallas and in census tracts that are not minority neighborhoods. A minority neighborhood is a census tract in which the percentage of persons of a particular racial or ethnic minority is more than 20 percentage points higher than the percentage of that minority population in the City of Dallas population. In addition, an Eligible Census Tract must have a poverty rate at or below the average poverty rate for the City of Dallas as based on the most recent U.S. Census Bureau data.

F. There are other changes in the administration of the Walker Settlement Voucher program that are set out in the Amended Agreed Final Judgment. These changes involve the factors determining the number of Walker Settlement Vouchers that remain available for use, the availability of the assistance of the Inclusive Communities Project for Walker Settlement Voucher program participants, the effect of a change in a census tract from an Eligible Census Tract because of census related changes, and similar matters. The importance of these other changes may depend on your personal circumstances.

The proposed Amended Agreed Final Judgement will affect several of the previous Orders in this case and will completely replace the current Agreed Final Judgment entered in 2004 that currently applies to DHA. The extent of the effect on the obligations in those orders is specifically described in the proposed Amended Agreed Final Judgment.

You are entitled to:

A. know about the terms of the proposed Amended Agreed Final Judgment;
B. give the Court your comments;
C. and object to the approval of the proposed Amended Agreed Final Judgment. If the Court approves the settlement, then DHA's duties and your rights in connection with the claims in this lawsuit would be those described in the Amended Agreed Final Judgment.

You may obtain a copy of the proposed Amended Agreed Final Judgment that includes all attachments to the proposal by requesting a copy from Daniel & Beshara, P.C., the attorneys representing the Plaintiffs and the plaintiff class in this case. You may email a request to danbesh@danielbesharalawfirm.com or by mail or telephone request to Daniel & Beshara, P.C., 3301 Elm Street, Dallas, Texas 75226; (214) 939-9230.

The Court has set a hearing on the proposed settlement for _____ in Courtroom _____, 1100 Commerce Street, Dallas, Texas.

2

THIS NOTICE DOES NOT DESCRIBE THE ENTIRE SETTLEMENT AND IS NOT AUTHORITY FOR ANY INTERPRETATION OF THE REQUIREMENTS OF ANY COURT ORDER. You are entitled to see and review the documents associated with the proposed changes. These documents are available from the website link set out above.

If you have any objection to the settlement and want to testify or give other evidence at the hearing, you must do the following: put the objection in writing, put "Walker v. HUD, 3:85-CV-1210-R" at the top, and at least 14 days before the hearing, send a copy to these addresses:

Plaintiffs' attorney:   Michael M. Daniel or Laura B. Beshara, 3301 Elm Street, Dallas, Texas 75226.

DHA's attorney:   Katie Anderson, Clark Hill Strasburger, 901 Main Street, Suite 6000, Dallas, Texas 75202.

The Court:   United States District Clerk, 1100 Commerce Street, Room 14A20, Dallas, Texas 75242.

If you have questions, call Plaintiffs' attorney. Do not call the Judge or the Clerk.


SO ORDERED:


       _____

Reed O'Connor
UNITED STATES DISTRICT JUDGE

Signed this \_\_\_\_\_ day of _____, 2019.

3

AGREED:

/s/ Katie Anderson
KATIE ANDERSON
State Bar No. 00789631
katie.anderson@clarkhillstrasburger.com
TATE L. HEMINGSON
State Bar No. 24064370
tate.hemingson@clarkhillstrasburger.com

CLARK HILL STRASBURGER
901 Main Street, Suite 6000
Dallas, TX 75202-3794 (214) 651-4300
(214) 651-4330 Fax

ATTORNEYS FOR DEFENDANT
THE HOUSING AUTHORITY FOR
THE CITY OF DALLAS

s/ Michael M. Daniel
MICHAEL M. DANIEL
State Bar No. 05360500
E-mail: daniel.michael@att.net

LAURA B. BESHARA
State Bar No. 02261750
DANIEL & BESHARA, P.C.
3301 Elm Street
Dallas, Texas   75226
(214) 939-9230
(214) 741-3596 Fax
E-mail: laurabeshara@swbell.net

ATTORNEYS FOR PLAINTIFFS

4

Respectfully Submitted,

/s/ Michael M. Daniel
Michael M. Daniel
State Bar No. 05360500
DANIEL & BESHARA, P.C.
3301 Elm Street
Dallas, Texas 75226-1637
214-939-9230
Fax 214-741-3596
E-mail: daniel.michael@att.net
Attorney for Plaintiffs

Laura B. Beshara
State Bar No. 02261750
DANIEL & BESHARA, P.C.
3301 Elm Street
Dallas, Texas 75226-1637
214-939-9230
Fax 214-741-3596
E-mail: laurabeshara@swbell.net
Attorney for Plaintiffs


/s/ Katie Anderson
KATIE ANDERSON
State Bar No. 00789631
katie.anderson@clarkhillstrasburger.com
TATE L. HEMINGSON
State Bar No. 24064370
tate.hemingson@clarkhillstrasburger.com

CLARK HILL STRASBURGER
901 Main Street, Suite 6000
Dallas, TX 75202-3794 (214) 651-4300
(214) 651-4330 Fax

ATTORNEYS FOR DEFENDANT
THE HOUSING AUTHORITY FOR
THE CITY OF DALLAS, TEXAS

37

Certificate of Service

I hereby certify that on June 13, 2019, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court. The electronic case files system will send a "Notice of Electronic Filing" to all counsel of record who have consented in writing to accept this Notice as service of this document by electronic means.

s/ Michael M. Daniel
Attorney for Plaintiffs