IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEBRA WALKER, ET AL. | * | |
| | * | |
| v. | * | |
| | * | 3:85-CV-1210-O |
| U.S. DEPARTMENT OF HOUSING | * | |
| AND URBAN DEVELOPMENT, ET AL., | * | CLASS ACTION |
| | * | |

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION TO APPROVE SETTLEMENT

**TABLE OF CONTENTS**

Table of contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

The settlement terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

(1) A procedural and factual history of this matter, including dates and
details about all relevant rulings, past settlements, monetary awards,
and the reason for past Court supervision. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

> Relevant rulings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

> The ruling most relevant to the proposed agreement is the
> Section 8 Substitution Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

> Relevant substantive orders are set out in the appendix . . . . . . . . . . . . . . . . . . . . . . . . . 6

> There have been numerous settlements in the case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

> Awards in the case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

> The reasons for past Court supervision. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

(2) Whether Court supervision should continue after this settlement,
for how long, and why it continues to be jurisdictionally appropriate . . . . . . . . . . . . . . . . . . . 13

(3) When, if ever, Defendants will satisfactorily remedy Plaintiffs' injury . . . . . . . . . . . . . . . . 14

(4) What constitutes withdrawal from the Walker Settlement Voucher
program and whether that effects Defendant's responsibilities under
terms of the settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

(5) A more thorough explanation of whether this settlement is appropriate
under Reed and Jones—including whether the 30-year procedural history
of this case weighs against or in favor of any relevant factors . . . . . . . . . . . . . . . . . . . . . . . . . 16

      The effect of the 30 year procedural history weighs in favor of
      the adequacy of representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

The six Reed factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Factor 1. There is no fraud or collusion behind the settlement. . . . . . . . . . . . . . . . . . . . . . . . . . 16

      There have been no procedural irregularities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      There has been extensive discovery on the pending motion for compliance . . . . . . . . . . 17

      There are no conflicts of interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      The basis for the payment of the financial assistance and issuance of the
      additional WSVs is set out in the proposed settlement . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Factor 2. Estimate of the complexity and expense of ongoing litigation . . . . . . . . . . . . . . . . . . 19

Factor 3. The stage of the proceeding and the amount of the discovery completed. . . . . . . . . . 20

Factor 4. The probability of Plaintiffs' success on the merits . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Factor 5. The range of possible recovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Factor 6. The opinions of the class counsel, class representatives, and absent class members . . 21

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Signature . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Certificate of service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**Table of authorities**

**Cases**

*Hills v. Gautreaux*, 425 U.S. 284 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15

*Gautreaux v. Chicago Housing Authority*, No. 66 C 1459 (N.D. Ill, 2019) . . . . . . . . . . . . . . . . 14

*Jones v. Singing River Health Servs. Found.*, 865 F.3d 285
(5th Cir. 2017), *cert. denied sub nom Almond v. Singing River Health Sys.*,
138 S. Ct. 1000 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 21

*Thompson v. United States Department of Housing and Urban
Development*, No. 1:95-cv-00309-MJG, (D. Md.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Reed v. Gen. Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Walker v. U.S. Dep't of Hous. & Urban Dev.*, 734 F. Supp. 1231
(N.D. Tex. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 11

*Walker v. U.S. Dep't of Hous. & Urban Dev.*, 734 F. Supp. 1289 (N.D. Tex. 1989) . . . . . . 6, 7, 11

*Walker v. City of Mesquite, et al.*, 912 F.2d 819 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Walker v. U.S. Dep't of Hous. & Urban Dev.*, 1997 WL 33177466 (N.D. Tex 1997) . . . . . . . . . 4

*Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761 (5th Cir. 1996) . . . . . . . . . . . . . . . . 10

*Walker v. City of Mesquite*, 169 F.3d 973 (5th Cir. 1999), *cert.
denied*, 528 U.S. 1131(2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 6, 22

*Walker v. U.S. Dep't of Hous. & Urban Dev.*, 326 F. Supp. 2d 780
(N.D. Tex. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Walker v. U.S. Dep't of Hous. & Urban Dev.*, 163 Fed. Appx. 351
(5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Walker v. U.S. Dep't of Hous. & Urban Dev.*, 402 F.3d 532
(5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Young v. Martinez*, Final Judgment and Decree, P-80-8-CA,
(E.D. Tex 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Statutes**

42 U.S.C. § 1437p. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Regulations**

24 C.F.R. Part 970. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

24 C.F.R. 982.503(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**The settlement terms**.

The settlement provides valuable relief for the class. The settlement continues the existing Walker Settlement Voucher program. If the settlement is approved, DHA will provide additional funding for security deposits, moving expenses, landlord incentive payments, application fees, and utility deposits. DHA will re-issue approximately 1,000 currently unused Walker Settlement Vouchers. The re-issued vouchers are in addition to the approximately 1,600 Walker Settlement Vouchers currently in use. As proposed by DHA, voucher families currently living in the highest poverty areas will be given the chance to use the re-issued Walker Settlement Vouchers to obtain housing in opportunity areas. This would be a fitting and just completion of the remedies provided in this case.

DHA has made many changes in its operations in order to eradicate the vestiges of racial segregation. The changes included actions not required by remedial orders. DHA showed its commitment to the renewal of the West Dallas public housing developments by moving its central office building and staff to West Dallas . Under the current leadership DHA took the lead and obtained the cooperation of other housing authorities in a regional affirmatively furthering fair housing planning process. DHA has supported and cooperated with The Inclusive Communities Project's innovative sublease program to recruit landlords in high opportunity areas by offering a variant of the corporate housing model for voucher families.

DHA will provide $2,850,000 for Mobility Financial Assistance to pay application fees, security deposits, landlord bonuses, utility deposits, and moving expenses for Walker Settlement Voucher tenants as provided in the Agreed Settlement Voucher Implementation Plan 2019 that is

part of the proposed agreement. Joint Appendix, Document 2819, pages, 20 - 21.[1] The payment standard for the Walker Settlement Vouchers will remain up to 125% of the relevant Small Area Fair Market Rent (SAFMR). Upon HUD publication of the new SAFMRs, the payment standard based on those SAFMRs shall be effective no later than three months immediately following HUD's final publication of the SAFMRs for the next fiscal or calendar year and in compliance with 24 C.F.R. 982.503(b). There have been about 1,600 Walker Settlement Vouchers in use for the last few years. The total number that will be available for use will go up to 2,646. A Settlement Voucher will become a regular Housing Choice Voucher when the class member using the Settlement Voucher ceases receiving benefits from any DHA housing program, whether such cessation of benefits is voluntarily or involuntarily. Joint Appendix, Document 2810, pages 9, 30. DHA will provide the documents required to monitor compliance with the settlement. Joint Appendix, document 2810, pages 12-15.

DHA opposed settlement of the Plaintiffs' motion for compliance unless Plaintiffs agreed to modifications of the existing Agreed Final Judgment. Plaintiffs' counsel agreed to the modifications set out in the settlement. The settlement limits the effect of some of the prior orders entered in the case. Joint Appendix, Document 2810, pages 2-7. If the settlement is approved, the pending motion for compliance will be denied. Joint Appendix, Document 2810, page 7. DHA is released from judicial supervision except to the limited extent set forth in the settlement and the orders remaining in effect under the settlement. Joint Appendix Document 2810, page 8. DHA is not obligated to increase the number of project based vouchers that were

---

[1] The settlement proposed that "DHA will provide $3,000,000 ($150,000 of which DHA has already been made available) for Mobility Financial Assistance." Joint Appendix in Support, Document 2810, page 10.

in the 2004 Agreed Final Judgment or to extend the existing contracts for project based

vouchers. Joint Appendix page 10. In addition, under the proposed settlement, the limit on the

number of public housing units in the West Dallas project is subject to a specific boundary.

 This supplemental brief is organized by the subjects set out in the 7/10/19 Order,

Document 2814, page 2.

 **(1) A procedural and factual history of this matter, including dates and details about all relevant rulings, past settlements, monetary awards, and the reason for past Court supervision**

 **Relevant rulings.**

 The relevant rulings in the history of this case are set out and discussed below and in the

Appendix in Support of Supplemental Brief (Supplemental Appendix). The Supplemental

Appendix includes the chronology of the relevant decisions and orders in the case from 1985

through the present. The Supplemental Appendix includes excerpts from the published opinions

and the abbreviated docket listings. The information includes the dates and the subjects for the

relevant rulings. This brief will discuss the relevant rulings from 2001 through the present.

 **The ruling most relevant to the proposed agreement is the Section 8 Substitution Plan.**

 By 2001, the liability of HUD and DHA for unconstitutional racial discrimination and

segregation in DHA's public housing and Section 8 voucher programs had been determined.[2]

*Walker v. City of Mesquite*, 169 F.3d 973, 975 (5th Cir. 1999), *cert. denied*, 528 U.S. 1131(2000)

In 2001, the class reached the settlement with HUD and DHA that is relevant to the pending

motion. The HUD settlement is in the Settlement Stipulation and Order. Document 2123. The

---

 [2] By 2001,The City's obligations under the 1990 Consent Decree were nearly complete and the City was dismissed from the case in 2003. Agreed Final Judgment, Document 2329.

DHA settlement is the *2001 Order Approving Plan for DHA's Implementation of HUD Settlement as DHA's Section 8 Substitution Plan*. Document. 2143. The Plan approved in those Orders implemented the United States Court of Appeals' judgment that the parties should adopt and implement a voucher based desegregation remedy before the Court of Appeals would approve a desegregation remedy using the construction of public housing in White non-Hispanic neighborhoods throughout the Dallas metropolitan area. *Walker*, 169 F.3d at 987-988.

The Court of Appeals directed the inclusion of several elements in the voucher remedy.

> First, increased reliance on Section 8 demands that the public agencies implement a vigorous mobility plan that serves the relocation needs and concerns of black families, reaches out to white landlords, affords adequate fair market rent exceptions, and combats illegal private discrimination. *Id*. at 987-988.

The 2001 Section 8 Substitution Plan Order incorporated these elements. Doc 2143. While implementation of the Substitution Plan has encountered difficulties, neither party has sought to end the plan and resort to development of public housing units in majority White non-Hispanic areas throughout the Dallas metropolitan area.

If the public housing units had been built in the majority White locations, the units would have been available in those locations for decades. For example, there have been public housing units in the old de jure racially segregated neighborhoods of South Dallas and West Dallas since the 1950s. *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 1997 WL 33177466 (N.D. Tex 1997), reversed on other grounds, *Walker*, 169 F.3d 973. A decision by DHA, HUD, or the relevant municipal government to end the use of public housing units would face substantial legal and practical barriers not applicable to a decision to end the remedial voucher program. Once public housing units are built, DHA may demolish or dispose of the units only under specific conditions and only with approval from HUD. DHA would have to submit an application for the demolition

of the units based on the obsolescence of the condition or the units or other facts which could not

be remedied by cost-effective means. DHA would have to provide the residents with relocation

resources. 42 U.S.C. § 1437p (Section 18 of USHA regarding demolition and disposition of

public housing); 24 C.F.R. Part 970 (Public Housing Program—Demolition or Disposition of

Public Housing Projects).

While the substitution of vouchers for public housing units in the desegregation remedy

plan provided the advantages pointed out by the Court of Appeals, DHA's ability to unilaterally

end the remedy requires no procedural compliance with voucher program requirements. DHA

can simply do what it has already done in the past and which lead up to the current motion to

remedy noncompliance. At different times, DHA has stopped issuing the Walker Settlement

Vouchers, stopped paying the enhanced rent payment standards, stopped providing the mobility

assistance, and stopped paying the mobility financial assistance required by the 2001 Order

Approving Plan. *See*, Plaintiffs' Motion for Relief from DHA's Non-compliance with Remedy

Orders, Doc. 2787, Brief in Support Doc. 2788, Appendix, Doc. 2789; April 17, 2014 Order,

Document 2759 (requiring DHA to calculate and use the correct Walker Settlement Voucher

Payment Standard for all Walker Settlement Voucher households); Order Doc. 2771, 12/22/1014

(requiring reimbursement to ICP for mobility financial assistance not paid by DHA); Order

2759, 4/7/2014 (DHA required to provide mobility assistance).

The current settlement seeks to avoid these issues and to keep the benefit of the Walker

Settlement Vouchers and to ensure that the original related mobility funding for the Walker

Settlement Vouchers from the HUD 2001 Settlement is provided.

The principal elements of the proposed Amended Agreed Final Judgment are those that

are directed at maintaining the availability of Walker Settlement Vouchers and the necessary mobility related financial assistance for the class members' use of those vouchers. These elements were adopted and have been implemented as part of the narrowly tailored court efforts to rectify the effects of the now-past, de jure, racially segregated, discriminatory practices of DHA, HUD, and the City of Dallas. *Walker*, 169 F.3d at 981–82. The general standard for remedial efforts in public housing desegregation cases followed the standard used in school desegregation cases. Every effort should be made to achieve the greatest possible degree of relief taking into account the practicalities of the situation. *Hills v. Gautreaux*, 425 U.S. 284, 297 (1976) (metropolitan wide remedy for Chicago public housing segregation).

**Relevant substantive orders are set out in the appendix.**

Relevant substantive orders and awards are set out in the Supplemental Appendix.

**There have been numerous settlements in the case**.

The Walker public housing/Section 8 desegregation litigation began in1985. The lawsuit contended that Mesquite's refusal to give its consent for DHA to administer Section 8 certificates within Mesquite violated the 14th Amendment and the other civil rights law prohibiting racial discrimination in housing. The suit was subsequently amended to bring in DHA, HUD, and the City of Dallas and to certify for a class of Black public housing and Section 8 participants.

As of 1985, there were no DHA vouchers in the suburbs, and DHA's public housing and Section 8 programs were all racially segregated. The racial segregation had existed for decades. The court found that DHA had a deliberate policy of strict racial segregation in its public housing projects. *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 734 F. Supp. 1289 (N.D. Tex. 1989).

-6-

> From its beginning, the primary purpose of DHA's public housing program was to prevent blacks from moving into white areas of this city. *Id.* at 1293.

Prior to the lawsuit, DHA maintained the segregated nature of its public housing by using its tenant assignment and selection practices to assign Whites were assigned to all-White projects and to assign Blacks were assigned to all-Black projects. *Id.* at 1297, 1300. The public housing projects were located in segregated neighborhoods with unequal site and neighborhood conditions. The court described the West Dallas project as "a gigantic monument to segregation and neglect." *Id.* at 1306. To be eligible for a voucher, a public housing tenant had to vacate its apartment and wait three months before applying to a very long waiting list for a Section 8 voucher. *Id.* at 1300.

The initial settlement in the case was approved in 1987. *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 734 F. Supp. 1231,1289 (N.D. Tex. 1989) *rev'd in part, Walker v. City of Mesquite, et al.*, 912 F.2d 819 (5th Cir. 1990). This opinion sets out the early stages of the litigation including the entry of the 1987 consent decree and subsequent issues arising out of that decree and the inclusion of the City of Dallas as a party and the City liability opinion.

The 1987 settlement provided for wide ranging relief. DHA was enjoined from racial discrimination in all of its public housing and Section 8 voucher programs including honoring Section 8 vouchers for use in the Dallas area suburbs. *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 734 F. Supp. 1231, 1248 (N.D. Tex. 1989). The class was certified. *Id.* at 1249. DHA was to provide the assistance necessary for voucher families to obtain desegregated housing. A comprehensive plan for the revitalization of the West Dallas public housing project was approved. This plan provided for the demolition and replacement of 2,600 public housing units with Section 8 voucher units that could be used anywhere in the Dallas metropolitan area. All

West Dallas residents wishing to relocate were given the opportunity and resources to do so. *Id.* at 1250-1263.

By 1989, DHA was in large scale  violation of the 1987 consent decree. *Id.* at 1232-1246. The violations included DHA's refusal to provide the required 120% Fair Market Rent Exceptions that would allow class members to obtain housing in predominantly White non-Hispanic areas. *Id.* at 1239.

The other major settlements in the case include: the 1990 City Consent Decree, the 1990 Supplemental Consent Decree (DHA); the Agreed Order for the Revitalization of Roseland Homes; the 2001 Settlement Stipulation and Order providing the resources for the Walker Settlement Voucher program; the 2001 Substitution Plan providing for the substitution of the Walker Settlement Vouchers for the 3,200 units of public housing to be developed in predominantly White areas under the previous HUD and DHA remedial orders; the City Final Judgment; and the DHA Agreed Final Judgment. The Supplemental Appendix includes more details on these orders. Supplemental Appendix, pages 2-8.

**Awards in the case**

Most of the awards in the case in this case have been funding for specific remedial elements. The 1987 consent decree provided relocation and other financial assistance to the West Dallas public housing project families who chose to move either to another project or by using a Section 8 voucher. *Walker*, 734 F. Supp. at 1256–57. The 1990 City Consent Decree provided $22,454,000 to the Housing Fund for purposes related to the provision of affordable housing to class members and other low income families. Schedule 34. The decree provided $50,000 per year for eight years, $400,000, to obtain units from private landlords willing to reserve units for

voucher families. Schedule 3.9. The City Consent Decree awarded $1,900,000 for eight years of funding for a low income housing orientated fair housing organization. Schedule 7.2. City Consent Decree, Sept. 24, 1990.

The Court subsequently approved the use of the Housing Fund for a variety of activities including financial assistance to DHA voucher families. The Court appointed the Inclusive Communities Project to be the administrator of the Housing Fund. Agreed Order, Document 2521. The Court approved the 2005 transfer of the Housing Fund to the Walker Housing Trust Fund. Order Approving Creation of Charitable Trust, Document 2551. The Court ended supervision over the administration of the Housing Fund in 2008. Order, Document 2666.

The Court entered the Supplemental Consent Decree (DHA) on September 24, 1990. In addition to other relief, the Supplemental Consent Decree (DHA) required payments to class members denied housing by DHA's failure to comply with the 1987 consent decree requiring an increased voucher payment standard. Payments were also required to compensate class members who were denied housing by DHA's failure to comply with the obligation to timely develop the Country Creek/Barbara Jordan Square public housing. This project had been delayed because it was in a White neighborhood.

The Court held DHA liable for damages to the named plaintiffs. 12/4/1992, Document 770. Subsequently an Agreed Judgment for $25,000 in damages per named plaintiff was entered. 10/2/1998, Document 1793.

The HUD Settlement Stipulation and Order provided $9.9 million in funding for mobility assistance to the class members choosing to use the Walker Settlement Vouchers provided by that settlement. Document 2123.

-9-

DHA paid $512,187.35 to Walker class members in reimbursements for DHA's failure to provide the 125% payment standard required by the Walker Settlement Voucher remedial orders. Notice of Plaintiffs' Report on the Final Resolution of Plaintiffs' Motion to Require Compliance. Documents 2143, Court Order Document 2759, 4/17/2014.

DHA paid the Inclusive Communities Project, Inc., $92, 217 as reimbursement for ICP's payments to Walker Settlement Voucher class members for mobility assistance that DHA was required to pay.12/22/2014, Document 2771.

The citations and descriptions of the orders awarding attorney fees for time and activities since 1991 are included in the Supplemental Appendix.[3] The awards are grouped by the relevant phases of the case: the fees in the 1993 application that were reduced by the Fifth Circuit in *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 766 (5th Cir. 1996); fees for the time spent from 1993 through 1999; fees for time spent from 2000 including the entry of the Settlement Stipulation and Order in 2001 through 2005 after the entry of the Agreed Final Judgment DHA in December 2004; and fees for time spent enforcing the remedial orders since 2005. In addition to plaintiffs' attorney fees, the Court awarded $288,075 in attorney fees to the Homeowner intervenors and smaller amounts to DHA's attorneys for activities involving the Housing Fund during the period when DHA was the Housing Fund Administrator. Appendix In Support of Plaintiffs' Supplemental Brief, 9-12; Documents2302, 2315, 2334, 2361 from docket sheet.

These awards to Plaintiffs' attorneys were necessary because of the extensive opposition

---

[3] The available abbreviated docket does not include orders before 1991. The fee orders for the period 1991 through 1993 were appealed and the actual awards were made in 1997 and in the appendix.

to the desegregation remedies required by the Court. The process of obtaining these remedies involved at least 17 appeals to the Fifth Circuit [15 between 1995 and 2005 - not all resulted in a decision], one petition for certiorari to the U.S. Supreme Court [denied], eight written appellate decisions [not all were formally reported opinions], and ten reported district court opinions. A Special Master was appointed, a receiver was appointed, and four neighborhood associations objecting to the placement of public housing in their areas were parties to motions or other pleadings attempting to stop such placements. Defendants or other parties opposing all or part of the relief sought were represented by at least 50 different attorneys. Docket Sheet: list of parties and attorneys, list of appeals, district court opinions or findings and conclusions.

Most of the money provided for the remedies in the case have been funding for the approximately 9,000 additional vouchers, public housing development, public housing renovation, and neighborhood improvements. Appendix In Support of Plaintiffs' Supplemental Brief, 2-8.

### The reasons for past Court supervision

Some of the actions that caused the Court to supervise the actions of the defendants include:

• The need to remedy the City of Dallas' obstruction of the implementation of the 1987 DHA and HUD consent decree, *Walker*. 734 F. Supp. 1289;

• the remedy for DHA's violations of the 1987 consent decree, *Walker*, 734 F. Supp. at 1232-1246. The 1995 Remedial Order Affecting DHA ordered DHA to take specific actions to remedy the segregated and unequal conditions still affecting the class. The remedy included the development of an additional 3,205 public housing units in predominantly White areas. February

-11-

7, 1995, Document 1188;

  • the issues involving lead contamination in the West Dallas project, 3/30/1992,

Document 677,

  • the Modification of the remedy affecting HUD after the vacation of the 1987 consent

decree, Findings of Fact and Conclusion of Law: HUD Motion to Modify Remedial Order

Affecting HUD, June 12, 1996, Document 1359.

  • The Order enforcing the City of Dallas obligation to make the payments into the

Housing Fund as required by the City Consent Decree and to pay interest on the payments

wrongfully withheld was entered on 2/12/1997. Document 1540. The total award was $10.7

million that was paid into the Housing Fund.

  • the proceedings for District Court approval of 40 units in North Dallas pursuant to the

race neutral site selection order, *Walker*, 326 F. Supp. 2d 780 (N.D. Tex. 2004);  affirmed

*Walker v. U.S. Dep't of Hous. & Urban Dev.*, 402 F.3d 532 (5th Cir. 2005); *Walker v. U.S. Dep't*

*of Hous. & Urban Dev.*, 163 Fed. Appx. 351 (5th Cir. 2005) *petition for rehearing en banc*

*denied*.

  • Plaintiffs' motion to require DHA to provide public financing in suburban areas. *Walker*

*v. U.S. Dep't of Hous. & Urban Dev.*, 326 F. Supp. 2d 773 (N.D. Tex. 2004).

  • DHA's failure to provide the 125% payment standard required by the Walker

Settlement Voucher remedial orders which lead to the proceedings in which DHA paid

$512,187.35 to Walker class members in reimbursements. Notice of Plaintiffs' Report on the

Final Resolution of Plaintiffs' Motion to Require Compliance. Documents 2143, Court Order

Document 2759, 4/17/2014.

• The current motion seeking relief for DHA's violations of the mobility remedial program.

The Court has maintained jurisdiction throughout the duration of the obligations imposed by the settlements with the defendants. The Court ended jurisdiction over the City in 2003 when the City's obligations under the 1990 Consent Decree were complete. Document 2329. The Court ended jurisdiction over HUD subject to HUD's completion of the specific obligations set out in the 2001 Settlement Stipulation and Order. Document 2123, pages 15-16.

**(2) Whether Court supervision should continue after this settlement, for how long, and why it continues to be jurisdictionally appropriate**

The nature of the violation - de jure racial segregation - and the complexity of the remedy have justified extended jurisdiction in similar cases. These remedial orders have also recognized the need for a conclusion and have set dates for the end of judicial supervision of compliance with the court orders.

There is a need for continued jurisdiction to provide a remedy for any violations that might occur. The jurisdiction can be restricted to that necessary to finish the implementation of the Walker Settlement Voucher program remedy. Based on past experience, the $2,850,000 in mobility financial assistance is likely to last from three to five years. It is likely that there will still be Walker Settlement Voucher families at the end of that five years. DHA will re-issue 1,000 Vouchers if the settlement is approved. The only supervision required for these provisions would be enforcement in the case of violations of these provisions. Other public housing desegregation cases have used a combination of a set period after which the jurisdiction ends except to enforce the specific and specified remedial actions still uncompleted.

The *Gautreaux* public housing desegregation case was filed in 1966. The District Court

entered the Order of Final Approval of Settlement Agreement on January 23, 2019. This was 53

years after the case was filed. The Order retains jurisdiction to enforce specified requirements

under the Agreement. The Action is to be dismissed with prejudice on July 31, 2024 without

further order of the court but only if no settlement enforcement actions are pending. *Gautreaux v.*

*Chicago Housing Authority*, No. 66 C 1459 (N.D. Ill, 2019) Document 824,

 The *Thompson* public housing desegregation case was filed in 1995. A Final Judgment

was entered on November 21, 2012. The Judgment dismissed the case with prejudice but

retained jurisdiction for 8 years to decide issues relating to attorney fees and specific

requirements of the Settlement that were incorporated into the Final Judgment. *Thompson v.*

*United States Department of Housing and Urban Development*, No. 1:95-cv-00309-MJG, (D.

Md.) Order 11/21/12, Document 1249.

 The *Young v. Pierce* public housing desegregation case was filed in 1980. Plaintiffs'

counsel were also class counsel in *Young v. Pierce*. A Final Judgment was entered in 1995. The

judgment was a permanent injunction covering public housing authorities in 36 East Texas

counties. The judgment provided that ten years after the judgment, the court would determine

whether its jurisdiction would continue or be terminated. *Young v. Martinez*, Final Judgment and

Decree, P-80-8-CA, (E.D. Tex 1995) page 20. The Court entered the Order Modifying Final

Judgment on 1/13/2004. This order incorporated changes to the previous final judgment and held

that if the specific requirements of the order were completed, no further relief would be granted.

 **(3) When, if ever, Defendants will satisfactorily remedy Plaintiffs' injury**

 The measure for relief in proceedings to remedy de jure racial segregation in a public

housing authority is to achieve the greatest possible degree of relief taking into account the

practicalities of the situation. *Gautreaux*, 425 U.S. at 297. All of the remedies sought from the

defendants in this case have been provided except for the completion of the Walker Settlement

Voucher program. As set out in the proposed agreement, DHA agrees that the proposed actions

for the completion of the Walker Settlement Voucher program are practical and can be

implemented. The Walker Settlement Voucher program remains the primary method by which

Black DHA voucher families are able to obtain housing in majority White non-Hispanic

locations. While 44% of Walker Settlement Voucher families are located in 50% or greater

White non-Hispanic census tracts, only 12% of Black, non Walker Settlement Voucher families

are able to do so. Evidence for this will be provided at the settlement hearing. Once the Walker

Settlement Voucher program is ended, the remedies for the injuries inflicted by the de jure

segregation will have been fully implemented.

**(4) What constitutes withdrawal from the Walker Settlement Voucher program and whether that effects Defendant's responsibilities under terms of the settlement**

The 2007 Order approving a Walker Settlement Voucher Implementation Plan held that

"Settlement vouchers should be re-issued when a participant switches to a regular Section 8

program, but not when a participant withdraws from the program entirely." 5/17/07, Document

2622. This provision is incorporated into the proposed agreement. Document 2810, pages 24-25.

It will continue to affect DHA's responsibilities just as the obligation affected DHA's

obligations under the current Agreed Final Judgment.

The proposed judgment provides that the Walker Settlement Voucher program ends when

the last Walker Settlement Voucher family leaves the program. Document 2810, page 10. The

funding for financial assistance ends when the agreed upon $2,850,000 is spent. Document 2810,

pages 10, 21. When both have occurred, DHA will have no more responsibilities under the

settlement.

**(5) A more thorough explanation of whether this settlement is appropriate under Reed and Jones—including whether the 30-year procedural history of this case weighs against or in favor of any relevant factors**

**The effect of the 30 year procedural history weighs in favor of the adequacy of representation which supports settlement approval**.

The 30 year procedural history demonstrates there has been significant opposition to remedies in this case. Appendix In Support of Plaintiffs' Supplemental Brief, pages 2-8. Continuing court jurisdiction to ensure the final implementation of the Walker Settlement Voucher Program is appropriate.

The adequacy of representation is the major element in the decision to approve a class settlement. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). The 30 year procedural history of this case as set out above shows that the class representatives and the attorneys for the class have aggressively, persistently, and competently represented the class in the past. Each time an obstacle to relief has arisen, the attorneys have taken effective action to overcome the obstacle.

**The six *Reed* factors**

The six factor *Reed* test for approval of a class action settlement is set out in *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 292–93 (5th Cir. 2017), *cert. denied sub nom. Almond v. Singing River Health Sys.*, 138 S. Ct. 1000 (2018). Analysis of these factors demonstrates approval is appropriate.

**Factor 1. There is no fraud or collusion behind the settlement.**

The first factor is the existence of fraud or collusion behind the settlement. *Id*. at 293. Facts relevant to this factor include procedural irregularities, lack of discovery, conflicts of

interest, and a quid pro quo of less than zealous negotiation and acceptance of questionable provisions in return for agreed upon class counsel fees. *Id*. at 295-296. As set out below, the facts show no fraud or collusion in the negotiation and presentation of the proposed settlement.

**There have been no procedural irregularities.**

There have been no procedural irregularities. In 2018, Plaintiffs gave the required Notice of Non-Compliance with the Walker Settlement provisions. Document 2789, pages 3-16. DHA offered unsatisfactory resolutions. Document 2789 pages 19-20. Plaintiffs filed the Motion for Relief from DHA's Non-compliance With Remedy Orders. Document 2787. The motion sought the exact relief that will be provided in the proposed amended judgment: the re-issuance of approximately 1,000 additional Walker Settlement Vouchers, $2,850,000 in mobility financial assistance for the Walker Settlement Vouchers, and the documents and reports necessary to monitor compliance with these provisions. Document 2789, page 3 compared to Document 2810, pages 9-10, 12-14. This is the result of zealous negotiation by Plaintiffs' counsel. The only concession was to include the remedy in the proposed Amended Agreed Final Judgment.

DHA did request and receive four agreed extensions of time from 9/27/18 until 12/18/2018 to respond to the motion. Documents 2790, 2792, 2794, 2797, 2799. There is nothing to suggest that this three month delay prejudiced the class.

**There has been extensive discovery on the pending motion for compliance**.

Class counsel conducted extensive document discovery. DHA provided tens of thousands of document pages. Summaries of this discovery will be exhibits at the settlement hearing. Class counsel conducted one and one half day of Rule 30(b)(6) depositions. Document 2812, pages 19-34. Much of the discovery concerned the receipt and spending of the HUD Settlement funding.

**There are no conflicts of interest**.

Plaintiffs' counsel do not represent DHA or any of its associated entities. There is no attorney fee agreement between Plaintiffs' counsel and DHA or any of its associated entities. Evidence on this issue will be presented at the settlement hearing.

**The basis for the payment of the financial assistance and issuance of the additional Walker Settlement Vouchers is set out in the proposed settlement**.

The proposed remedy in the settlement is the provision of the $2,850,000 in mobility financial assistance for Walker Settlement Vouchers and the availability for reissuance of 2,645 Walker Settlement Vouchers. The 2,645 Walker Settlement Vouchers includes the additional 1,000 Walker Settlement Vouchers that are not currently in use but will be issued and funded under the proposed settlement. Document 2810, page 9-10. The proposed distribution of the mobility assistance and the amounts of the assistance per assisted move are specifically set out in the Walker Settlement Voucher Implementation Plan that is part of the proposed agreement. Document 2810, pages 20-23.

The initial priority for the issuance of the additional settlement vouchers are the voucher families living in very high poverty census tracts, RECAP area (Racially/Ethnically Concentrated Areas of Poverty). After this offer, DHA will offer the vouchers for re-issuance to current HCV participants living in a Walker eligible census tract. Joint Appendix, Document 2180, page 27.

DHA's obligation to pay the mobility related financial assistance is absolute and unqualified. Document 2810, pages 10, 21. DHA has the funds to pay the financial assistance. As of December 31, 2018, DHA had $60,356,586 in "unrestricted net position." These funds are available for general housing purposes which would include the provision of the mobility

-18-

financial assistance. Dec. 31, 2018 Single Audit, page 10. The documents supporting this statement will be an exhibit at the settlement hearing.

DHA receives an annual voucher "management fee" in excess of $2,000,000. This fee is not subject to restrictions but is revenue that can be used at DHA's discretion. The deposition and other documents supporting this statement will be exhibits at the settlement hearing.

There is no quid pro quo attorney fee agreement in the proposed settlement documents. The Amended Agreed Final Judgment only provides that the Court has jurisdiction to hear and decide any motion for attorney fees. Joint Appendix in Support of Plaintiffs' and DHA's Motion for Approval, Document 2810, page 16.

There is no other quid pro quo attorney fee agreement between class counsel and DHA. Class counsel will present evidence on this issue at the settlement hearing.

**Factor 2. Estimate of the complexity and expense of ongoing litigation**

The complexity and expense of ongoing litigation should the settlement not be approved would be based on a hearing and decision on Plaintiffs' pending motion for compliance. Document 2787. Plaintiffs' counsel estimate the hearing could be done in two hours. DHA has not filed any motion to seek the changes it wants in the Agreed Final Judgment if the settlement is not approved. In the absence of such a motion, Plaintiffs' counsel does not have enough information to make an estimate of the time and expense such a motion would require. If the changes sought are limited to those in the proposed settlement, the time and expense should not be substantial. As set out in this brief, most of the remedy has been completed. The remaining remedial element is the Walker Settlement Voucher program. The completion of this remedy is practical and can be accomplished through compliance with the settlement.

**Factor 3. The stage of the proceeding and the amount of the discovery completed**

The settlement is being proposed as the completion of the final but yet to be completed remedial element in a difficult, complex, and bitterly opposed case seeking to remedy the de jure racial segregation of public housing and related programs. The completion of the remedy supports approval of the settlement.

Plaintiffs' counsel conducted substantial pre-discovery investigation that is set out in the written notice of non-compliance. Appendix in Support of Motion for Compliance, Document 2789, pages 3-18. Once the motion for compliance was filed, Plaintiffs' counsel conducted the extensive document discovery and depositions described above. The investigation and discovery conducted support approval of the settlement. Plaintiffs' counsel has used the discovery process to uncover and document the facts supporting the relief sought in Plaintiffs' Motion for Compliance.

**Factor 4. The probability of Plaintiffs' success on the merits**

Plaintiffs' attorneys estimate a general 50%  probability of success on the merits of the motion for compliance based on the objective facts and the terms of the relevant court orders. The 50% estimate is based on the general uncertainty of any litigation rather than any lack of evidence or authority to support the relief sought.

**Factor 5. The range of possible recovery**

Plaintiffs' motion for compliance seeks a court order requiring DHA to:

A. re-issue and fund approximately 1,000 remaining Walker Settlement Vouchers to class members as required by the orders in the case;

B. provide Walker Settlement Voucher clients with financial assistance from the HUD

awarded settlement funds for housing mobility into Walker Target Areas; and

C. produce the documents and other information necessary to monitor compliance with

the court orders in this case. Document 2787, page 3.

Plaintiffs' brief in support of the motion estimates $3,000,000 is still available for

financial assistance to Walker Settlement Voucher families. Document 2788, page 12.

The range of recovery should the motion for compliance be litigated is from 0 to 1,000

Walker Settlement Vouchers to be re-issued and funded in addition to the approximately 1,600

Walker Settlement Vouchers currently available. The recovery of funding ranges from $0 to

$3,000,000 if the motion is litigated. The request for the provision of documents could be denied

in whole or in part.

The settlement provides for recovery at the top of the range of possible recovery.

**Factor 6. The opinions of the class counsel, class representatives, and absent class members**

Class counsel and a current class representative support approval of the proposed

settlement. Plaintiffs' Appendix in Support of the Joint Plaintiffs' and DHA's Motion for

Approval, Document 2812, pages 2-3.

Plaintiffs' counsel have received several requests for information about the proposed

settlement from class members. The requested information was provided. Plaintiffs' counsel

have received no statements of opposition from any class member. The date by which such

statements must be filed is October 5, 2019.  Order, Document 2814, page 1.

As of 9/23/2019, there has not been class member opposition to the proposed settlement

that would support disapproving the proposal. *Jones*, 865 F.3d at 299-300.

**Conclusion**

All but one of the remedies ordered in this case have been completed. The remaining remedy, the substitution of vouchers for the construction of public housing units in White areas was approved and endorsed by the United States Court of Appeals for the Fifth Circuit. *Walker*, 169 F.3d at 988. DHA does not oppose the completion of the remedy. DHA has joined in the motion to approve the completion of the remedy. The remedy and the accompanying modifications of the current Judgment should be approved as fair, reasonable, and adequate for the class.

**Respectfully Submitted**,

/s/ Michael M. Daniel
Michael M. Daniel
State Bar No. 05360500
DANIEL & BESHARA, P.C.
3301 Elm Street
Dallas, Texas 75226-1637
214-939-9230
Fax 214-741-3596
E-mail: daniel.michael@att.net
Attorney for Plaintiffs

Laura B. Beshara
State Bar No. 02261750
DANIEL & BESHARA, P.C.
3301 Elm Street
Dallas, Texas 75226-1637
214-939-9230
Fax 214-741-3596
E-mail: laurabeshara@swbell.net
Attorney for Plaintiffs

### Certificate of Service

I hereby certify that on September 23, 2019, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court. The electronic case files system sent a "Notice of Electronic Filing" to all counsel of record who have consented in writing to accept this Notice as service of this document by electronic means.

s/ Michael M. Daniel
Attorney for Plaintiffs