IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEBRA WALKER et al. | § | |
|     Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| UNITED STATES DEPARTMENT | § | 3:85-CV-1210-R |
| OF HOUSING AND URBAN | § | |
| DEVELOPMENT et al., | § | |
|     Defendants. | § | |

**DEFENDANT HOUSING AUTHORITY OF THE CITY OF DALLAS'
SUPPLEMENTAL RESPONSE BRIEF IN SUPPORT OF
MOTION TO APPROVE SETTLEMENT**

Defendant the Housing Authority of the City of Dallas (DHA) submits this supplemental brief in support of and in response to Plaintiffs' Supplemental Brief (Dkt. 2816).

**I.
INTRODUCTION**

In addition to the points below, those in Plaintiffs' Supplemental Brief, and the prior briefing, DHA would urge this Court to approve the settlement. As Plaintiffs acknowledge, the DHA of today is nothing like the DHA of the past. DHA's leadership has been for some time now committed to tackling the problems of racial and economic segregation in housing that has long afflicted Dallas. DHA believes that the proposed Amended Agreed Final Judgment and Settlement Voucher Implementation Plan pending before this Court offer a fair, reasonable, and adequate resolution, which will mark a final chapter in this decades-long litigation.

Rather than continue with costly and distracting litigation, DHA and Plaintiffs have worked together to craft an Amended Agreed Final Judgment and Settlement Voucher Implementation Plan that streamlines decades of previous orders while at the same time giving DHA more control over its implementation of the Walker program so that it can more efficiently

and effectively administer the final stages of the Walker program to the benefit of both DHA and especially the class members. The proposed settlement achieves this by, among other things:

- Centralizing in one fixed document (the Amended Agreed Final Judgment) and one malleable document, as needed, (the Settlement Voucher Implementation Plan) all the obligations and restrictions of the Walker program for future reference by DHA and its staff;

- Removing the requirement for providing 119 project-based section 8 housing units, which have historically been difficult to supply and not as beneficial to the Plaintiff class, as agreeing to administer the current Walker Settlement Vouchers;

- Allowing DHA to focus on helping class member families in most need by expanding the definition of where Walker vouchers may be used and focusing mobility counseling resources on those class members in R/ECAP (Racially or Ethnically Concentrated Areas of Poverty) neighborhoods;

- Clarifies when a Walker voucher is terminated, resolving dispute over definition in prior Agreed Final Judgment;

- Provides flexibility in addressing changes to Eligible Census Tracts when new census data becomes available; and

- Minimizes need for outside legal counsel for both parties and minimizes potential for Court intervention by clarifying how potential issues will be handled, leaving less room for interpretation or disagreement.

## II.
## RESPONSE POINTS TO PLAINTIFFS' SUPPLEMENTAL BRIEF

DHA agrees with and adopts Plaintiffs' Supplemental Brief almost in its entirety. DHA submits the following response points below to confirm agreement and clarify certain matters.

### 1. Procedural and Factual History of the Case

For the most part, DHA adopts the procedural and factual history set forth in Plaintiffs' Supplemental Brief, along with its summary of the past orders, awards, and reason for past Court supervision. DHA, however, presents the following clarifications and corrections:

- Regarding Plaintiffs' statement on page 12 about a 2014 order related to the 125% payment standard, it should be noted that this dispute over application of the 125% payment standard was not because of any discriminatory purpose or intent and there was

no finding of any discriminatory purpose or intent. (*See, e.g.*, Dkt Nos. 2741, 2752, 2759.)

- Regarding Plaintiffs' statements that at different times DHA has stopped issuing Walker vouchers and stopped providing other assistance under the 2001 Order Approving Plan, DHA notes that these disputes arose out of good faith arguments over the relevant aspect of the 2001 Order to each dispute and were not done out of intentional disregard for the 2001 Order. (*See* Dkt. 2816, p. 5.) DHA, however, agrees with Plaintiffs that the proposed settlement is designed to resolve some of these past disputes and prevent future disputes of a similar nature.

- Regarding Plaintiffs' statement that upon HUD publication of the new SAFMRs, the payment standard based on those SAFMRs shall be effective no later than three months immediately following HUD's final publication of the SAFMRs for the next fiscal or calendar year and in compliance with 24 C.F.R. 982.503(b), DHA agrees it will comply with 24 C.F.R. 982.503(b) as it now exists or as it may be amended.

## 2. Whether Court Supervision Should Continue After Settlement

As Plaintiffs note in their brief, the proposed settlement set forth in the Amended Agreed Final Judgment and Settlement Voucher Implementation Plan disposes of all the prior issues in the case and leaves only two remaining parts of the Walker Settlement Voucher program: (a) the $2,850,000 provided by DHA for mobility financial assistance and (b) the remaining settlement vouchers, including the approximately 1,000[1] voucher to be reissued as part of the settlement. DHA generally agrees with Plaintiffs' statements that limited continued jurisdiction is needed to provide recourse for resolving potential disputes over these two final aspects of the Walker Settlement Voucher program. DHA agrees with Plaintiffs that the funding for mobility financial assistance is likely to last approximately three to five years. Continued jurisdiction for a similar amount of time would seem appropriate and in line with the length of similar cases involving remedying past housing segregation issues cited by Plaintiffs.

## 3. When Will Defendants Satisfactorily Remedy Plaintiffs' Injury

---

[1] This number is an estimate because it was based on the number at the time the parties agreed to the underlying settlement terms and may have changed by the time this settlement is approved.

DHA agrees that all of the previous remedies sought by Plaintiffs in this case have been provided except for completion of the Walker Settlement Voucher program. DHA further agrees with Plaintiffs' assessment that the plan for administering the final phases of the Walker Settlement Voucher program in the proposed Amended Agreed Final Judgment and Settlement Voucher Implementation Plan provide a practical and workable method to ensure that the goals of the program are met and the past injuries are satisfactorily remedied. DHA is committed to working to implement the program under the settlement terms to meet these goals.

### 4. What Constitutes Withdrawal from the Walker Settlement Voucher Program

As noted above, the proposed settlement imposes two obligations on DHA: (a) to provide $2,850,000 for mobility financial assistance to class members; and (b) to reissue approximately 1,000 new Walker vouchers and administer the remaining vouchers. As DHA understands it, these are separate obligations that each has separate end points.

First, DHA's obligation to provide the $2,850,000 for mobility financial assistance along with any other financial obligations previously incurred in this case ends when DHA has expended that amount of funds. (*See* Dkt. 2810, Amended Agreed Final Judgment, p. 4.) The Settlement Voucher Implementation Plan details how DHA may use these funds. (*See* Dkt. 2810, Settlement Voucher Implementation Plan 2019, § III.)

Second, under the proposed Amended Agreed Final Judgment, a Walker settlement Voucher remains effective for use by an eligible class member or for re-issuance to another eligible class-member until "there has been a determination that the WSV participant, while residing in an Eligible Census Tract, terminates or is terminated from participation in the voucher program and is no longer a participant in any DHA housing program." Upon that occurrence, "that particular Walker Settlement Voucher is eliminated and the total number of

Walker Settlement Vouchers is thereby reduced." (Amended Agreed Final Judgment (proposed), Dkt. No. 2810, p. 9.) Thus, as Plaintiffs note, the Walker Settlement Voucher program will end when the last family "withdraws" entirely from the program and no vouchers remain eligible for reissuance. (*See* Dkt. 2810, Settlement Voucher Implementation Plan 2019, § IV "Issuance of Vouchers.")

### 5. Appropriateness of Settlement under *Reed* and *Jones* Factors

DHA agrees with Plaintiffs' application of the *Reed* and *Jones* factors to this case but would add the following clarifications.

First, Plaintiffs state that under the Amended Agreed Final Judgment DHA has an absolute and unqualified obligation to pay the $2,850,000 in mobility financial assistance and that DHA has the funds to pay this amount. DHA agrees with this statement but disagrees with Plaintiffs' characterization of the nature of funds available to DHA for general housing purposes when stating that DHA had an "unrestricted net position" of $60,356,586 as of December 31, 2018. (Dkt. 2816, p. 18.) Under federal housing law, fungibility of program funds is generally not allowed. In other words, DHA cannot use funds designated under one program (e.g., Section 9) for use in another program (e.g., Section 8). In short, DHA has funds available to satisfy the settlement in this case, but the classification of "unrestricted net position" does not mean that DHA has "unrestricted" use of these funds since their use is restricted by federal laws and program regulations.

Second, Plaintiffs state "DHA receives an annual voucher 'management fee' in excess of $2,000,000. This fee is not subject to restrictions but is revenue that can be used at DHA's discretion." (Dkt. 2816, p. 19.) This statement is not accurate as DHA's administrative fees (also called management fees) are restricted under 24 C.F.R. § 982.152, as further explained in PIH

Notice 2015-17 § 3 (describing how under § 982.152 PHA administrative fees may only be used to cover costs incurred to perform PHA administrative responsibilities for the program in accordance with HUD regulations and requirements"). Ultimately, however, this does not have any bearing on the ability of DHA to provide the financial assistance under the Amended Agreed Final Judgment.

### III.
### EVIDENCE

At the hearing, to the extent helpful to the Court, DHA will be prepared to present testimony and documentary evidence on the following:

1. Dallas still has segregated communities of Class Members;

2. WSVs have proven successful in desegregating Class Members;

3. DHA has $2,850,000 in funds that can be used for mobility counseling to continue desegregation, and past vestiges of discrimination will be satisfactorily addressed through use of such funds.

### IV.
### CONCLUSION

For the reasons set forth above and the other briefing in support of this settlement, DHA respectfully requests that the Court approve for entry the Amended Agreed Final Judgment and Settlement Voucher Implementation Plan 2019 after appropriate notice and hearing.

Respectfully submitted,

/s/ *Katie Anderson*
**KATIE ANDERSON**
State Bar No. 00789631
katie.anderson@clarkhillstrasburger.com
**TATE L. HEMINGSON**
State Bar No. 24064370
tate.hemingson@clarkhillstrasburger.com

**CLARK HILL STRASBURGER**
901 Main Street, Suite 6000
Dallas, TX 75202-3794
(214) 651-4300
(214) 651-4330 Fax

**ATTORNEYS FOR DEFENDANT
THE HOUSING AUTHORITY FOR
THE CITY OF DALLAS, TEXAS**

Certificate of Service

I hereby certify that on October 7, 2019, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the court's ECF system.

/s/ *Tate L. Hemingson*
Tate L. Hemingson

**DEFENDANT'S SUPPLEMENTAL RESPONSE BRIEF**                                                          Page 7
**IN SUPPORT OF MOTION TO APPROVE SETTLEMENT**
4836-9983-0439.4/B7385/A65002/100719